UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JUSTIN T. HARLOW,

     **Plaintiff,**

v.                                                                    Case No: 5:25-cv-71-PRL

COMMISSIONER OF SOCIAL
SECURITY,

     **Defendant.**

_____

### ORDER

Plaintiff appeals the administrative decision denying his applications for a period of disability and disability insurance benefits ("DIB") and for Supplemental Security Income (SSI). Upon a review of the record, the memoranda, and the applicable law, I find that the Commissioner's decision is due to be affirmed.

### I.    BACKGROUND

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> On July 21, 2021, Plaintiff protectively filed an application for disability insurance benefits for a period of disability (DIB) under Title II and for supplemental security income (SSI) under Title XVI, alleging disability beginning December 16, 2020 (Tr. 232-42). After the claims were denied at the initial and at the reconsideration levels, Plaintiff requested a hearing with an Administrative Law Judge (ALJ) (Tr. 133-42, 146-58). After a hearing, an ALJ issued an unfavorable decision on April 23, 2024 finding Plaintiff not disabled (Tr. 8-25, 70-97). Plaintiff sought review of the ALJ's decision and on October 11, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision (Tr. 1-7). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

(Doc. 28 at 1-2).

At the time of the ALJ's decision, Plaintiff was 41 years old. (Tr. 20). Plaintiff has a GED and has past work as an emergency medical machine technician. (Tr. 269). Based on a review of the record, the ALJ found that the claimant has the severe impairments of coronary artery disease, ischemic cardiomyopathy, status post coronary artery bypass graft, status post implantable cardioverter-defibrillator, hypertension, hyperlipidemia, low testosterone, and obesity. (Tr. 14).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> claimant can climb ramps and stairs occasionally; can never climb ladders, ropes, and scaffolds; can stoop, crouch, and kneel occasionally; can never crawl; must avoid concentrated exposure to pulmonary irritants such as smoke, dust, concentrated fumes, and poor ventilation; must avoid concentrated exposure to extreme cold, extreme heat, and humidity; can never be exposed to unprotected heights and dangerous unguarded moving machinery; limited to an environment with no more than a moderate noise level as defined in the Selected Characteristics of Occupations (SCO); and limited to simple tasks in a routine work environment.

(Tr. 15-16).

Based on the RFC, and considering the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 19). In particular, and considering the testimony of the vocational expert, the ALJ identified the representative jobs of label maker, inspector, and table worker, which are all sedentary exertional level jobs. (Tr. 19). Accordingly, the ALJ determined Plaintiff was not disabled from December 16, 2020 (the alleged onset date), through the date of decision. (Tr. 19-20).

## II.    STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.    DISCUSSION

Plaintiff raises two issues on appeal: (1) whether the ALJ failed to consider evidence of Plaintiff's limitations in determining Plaintiff's RFC; and (2) whether the ALJ erred in finding that jobs existed in significant numbers in the United States to render Plaintiff not disabled. (Doc. 20 at 2).

### A.  THE APPLICABLE REGULATIONS

As a preliminary matter, Plaintiff acknowledges that his claim is subject to the new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed his applications in 2021, thus the new rules apply.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical

opinions; (3) other medical evidence, (4) evidence from nonmedical sources; and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a)(2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2) (2017).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 416.920c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 416.920c(c)(1)-(5).

### B.  THE ALJ'S DETERMINATION OF PLAINTIFF'S RFC

Plaintiff first contends that, in determining Plaintiff's RFC, the ALJ erred by failing to properly account for Plaintiff's limitations as to standing and walking beyond a sedentary level, Plaintiff's need to elevate his legs for edema, and for failing to account for off-task time or absenteeism related to episodes of syncope. (Doc. 20 at 19). Plaintiff argues that the ALJ relied on records early in Plaintiff's treatment in error, because Plaintiff's medical records demonstrate a "clear downward trend" in Plaintiff's functioning. (Doc. 20 at 20). Plaintiff also argues that the ALJ failed to adequately address Plaintiff's symptoms and limitations and that the ALJ failed to articulate explicit and adequate reasons for discounting Plaintiff's subjective complaints. Plaintiff contends that the ALJ failed to address "the multitude of records" reflecting Plaintiff's inability to walk well and instead focused on earlier records showing some improvement in his condition. (Doc. 29 at 2).

As Defendant points out, the ALJ found that Plaintiff had the RFC to perform a range of sedentary work, with some limitations. The ALJ's express discussion of Plaintiff's condition reveals that he understood and evaluated Plaintiff's condition as a whole. Further, as Defendant argues, the relevant medical records do not include objective medical evidence that demonstrates that Plaintiff's impairments were as limited as he alleged.

A review of the medical record reveals that the ALJ's RFC determination was based on substantial evidence. For example, in February 2022, it was noted Plaintiff was seen by pulmonary, and his workup was unremarkable. (Tr. 1021). At the same visit, Plaintiff inquired if he could ride rollercoasters. (Tr. 1021). In August 2022, he had an ejection fraction of 35-40%. (Tr. 1124). In June 2023, Plaintiff was noted to be stable on all medication and needed no further cardiac testing. (Tr. 1607). In February 2024, Plaintiff's ejection fraction was noted to be 30%. (Tr. 1973). Ultimately, the ALJ found that reducing Plaintiff to the sedentary exertional level with additional restrictions would account for the restrictions caused by Plaintiff's combination of impairments, including his shortness of breath, reduced ejection, pulmonary and migraine symptoms. (Tr. 17-18).

Notably, the ALJ carefully considered but did not fully credit the state agency medical consultant's finding that the Plaintiff was capable of light exertional level work. (Tr. 18). In considering that opinion, the ALJ expressly considered many of the symptoms that Plaintiff contends were overlooked. The ALJ stated that the consultant's explanations were "not entirely consistent with the overall record that documents the claimant's reduced ejection fraction and shortness of breath symptoms, which are more consistent with the further restrictions contained in this decision's reduced functional capacity." (Tr. 18). The ALJ further stated, "[i]n consideration of complaints of shortness of breath and the medication side effects of tiredness, as well as the additional impact of obesity, I further reduced the residual functional capacity from light to sedentary." (Tr. 18).

The ALJ expressly articulated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are

not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16-17). This finding is indeed supported by substantial evidence, including the medical evidence discussed above.

The Court agrees that the ALJ had explicit and adequate reasons to reject Plaintiff's characterization of his symptoms and limitations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ's decision should be affirmed because substantial evidence supports the ALJ's evaluation of Plaintiff's condition and his subjective complaints. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

The undersigned finds that, particularly considering the ALJ's RFC finding for less than the full range of sedentary work, Plaintiff's argument that the ALJ failed to properly consider the entire medical record is unpersuasive. Despite Plaintiff's argument, it is apparent that the ALJ did consider the entire medical record and Plaintiff's full range of alleged symptoms in reaching the decision. In the context of the ALJ's decision, it is apparent that the ALJ did consider evidence such as Plaintiff's difficulty walking, his reported need to elevate his legs, and needing to stop and catch his breath. To the extent that the ALJ found Plaintiff's limitations supported, those limitations were accounted for in Plaintiff's RFC for less than the full range of sedentary work.

This Court's review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Plaintiff's argument amounts to little more than an invitation to the Court to improperly reweigh the evidence and

credit the evidence favored by Plaintiff. Here, the ALJ carefully considered the entire record, including all of Plaintiff's impairments, the medical record as a whole, and opinion evidence.

The ALJ is required "to consider all of the medical and other evidence of record[.]" *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021). Importantly, the ALJ is not required to use "magic words in a claimant's RFC assessment." *Carbone v. Comm'r of Soc. Sec.*, 2017 WL 1476283, at * 3 (M.D. Fla. Mar. 3, 2017). Further, "there is no requirement that the ALJ include every limitation . . . verbatim" into an RFC determination. *Hilton v. Comm'r Soc. Sec.*, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that the ALJ is not required "to specifically address every aspect of an opinion or every piece of evidence in the record").

Upon review, I submit that substantial evidence supports the ALJ's decision and the RFC determination.

### C. THE ALJ'S CONSIDERATION OF VOCATIONAL EXPERT TESTIMONY

As his second argument on appeal, Plaintiff argues that the ALJ erred by relying on vocational expert testimony regarding the number of jobs in the national economy that Plaintiff can perform.

Specifically, Plaintiff argues that "common sense would call into question" the VE's testimony claiming 63,000 dowel inspector jobs exist in the national economy, citing decisions from other district courts outside of the Eleventh Circuit[1] that have characterized the job of dowel inspector as obsolete. (Doc. 29 at 4).

---

[1] Plaintiff cites *Morsy v. Comm'r of Soc. Sec.*, 20-CV-3960, 2023 U.S. Dist. LEXIS 175751*, at *5 n.3 (E.D.N.Y. Sept. 29, 2023), and *Brian T. v. Bisignano*, 2:24-cv-00868, 2025 U.S. Dist. LEXIS 167856 at *10 n.4 (D. Vt. Aug. 28, 2025).

Again, Plaintiff's argument is unpersuasive. First, this Court has specifically held that under the current regulations, the DOT is a reliable source of occupational information. *See e.g.*, *Hall v. Comm'r of Soc. Sec.*, No. 3:23-CV-1141-DNF, 2024 WL 3385452, at *5 (M.D. Fla. July 12, 2024). The applicable regulations still include the DOT as an acceptable source for job data evidence and the vocational expert's testimony complied with the regulations. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d).

Further, in addition to the dowel inspector job, the Vocational Expert also identified the jobs of label maker and table worker as jobs an individual with Plaintiff's RFC could perform. (Tr. 19). *See Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (finding that even if an apparent conflict existed, it would be harmless error because ALJ identified a different job plaintiff could perform and substantial evidence supported the ALJ's finding that the unaffected job existed in significant numbers in the national economy).

Plaintiff contends that these other two jobs listed only have 8,000 and 15,000 jobs available nationally and "these numbers do not constitute significant numbers within the national economy." (Doc. 20 at 25). However, in *Atha v. Commissioner, Social Security Administration*, 616 F. App'x 931, 934 (11th Cir. 2015), the Eleventh Circuit stated that it "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers.'" *See also, Best v. Comm'r of Soc. Sec.*, No. 2:17-CV-219-FTM-MRM, 2018 WL 3569255, at *8 (M.D. Fla. July 25, 2018) (finding that 2,000 jobs nationally as a final assembler independently constitutes a significant number of jobs); and *Sheres v. Berryhill*, No. 6:18-CV-1000-ORL-DNF, 2019 WL 2755031, at *9 (M.D. Fla. July 2, 2019) (affirming the ALJ's decision and accepting the ALJ's finding that 9,000 title examiner jobs constituted a significant number of jobs).

For the reasons explained above, I find that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's findings regarding Plaintiff's condition, the RFC, and Plaintiff's limitations. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

## IV. CONCLUSION

Upon due consideration and for the reasons stated above, the ALJ'S decision is AFFIRMED under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

DONE AND ORDRED in Ocala, Florida on March 11, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record
Unrepresented Party
Courtroom Deputy

- 11 -